**CHERYLLYNN WALTERS, ESQUIRE**
**Attorney ID # 033722001**
**STEPHANIE E. FARRELL, ESQUIRE**
**Attorney ID # 003401998**
**NEHMAD DAVIS & GOLDSTEIN, P.C.**
4030 Ocean Heights Avenue
Egg Harbor Township, New Jersey 08234
Phone:  (609) 927-1177
Fax:  (609) 926-9721
Email: cwalters@ndglegal.com/ sfarrell@ndglegal.com
*Attorneys for Plaintiff, Rising Sun Recovery, LLC*

**UNITED STATES DISTRICT COURT**
**THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RISING SUN RECOVERY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON TOWNSHIP ZONING BOARD OF ADJUSTMENT,<br><br>Defendant. | Case No.<br><br>Civil Action<br><br>**VERIFIED COMPLAINT** |

**PRELIMINARY STATEMENT**

In this fair housing action, Plaintiff, Rising Sun Recovery, LLC, claims that the Washington Township Zoning Board of Adjustment (the "Board") has interfered with the operation and occupancy of a dwelling for disabled persons recovering from alcoholism and substance abuse and has failed to provide a reasonable accommodation in violation of the Fair Housing Act, as amended (42 *U.S.C.* §§ 3601, *et seq.*), the Americans with Disabilities Act, as amended (42 *U.S.C.* §§ 12101, *et seq.*) and the New Jersey Municipal Land Use Law (*N.J.S.A.* 40:55D-1, *et seq.*).

Plaintiff applied to the Board for a favorable interpretation of the Township Zoning Ordinance's definition of "family," pursuant to *N.J.S.A.* 40:55D-70b or, in the alternative, for use variance relief pursuant to *N.J.S.A.* 40:55D-70d(1), as a reasonable accommodation to permit the continued occupation of the single family home located at 908 Whitman Drive, Washington Township, Gloucester County, New Jersey (sometimes referred to as the "Home") by a group of individuals in recovery living together as a single housekeeping unit. Such a group of individuals is recognized by the regulations of the New Jersey Department of Community Affairs ("DCA") as a Cooperative Sober Living Residence. This living arrangement is the functional equivalent of a single housekeeping unit and is recognized by the DCA as a residential use.

The Board denied the application for interpretation and refused to grant variance relief as a reasonable accommodation. Accordingly, the Plaintiff seeks a declaration that the Board's denials violated the Fair Housing Act, the Americans with Disabilities Act, as amended, and the New Jersey Municipal Land Use Law, *N.J.S.A.* 40:55D-1, *et seq.*, and seeks an award of injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§1331 and 1343, 42 U.S.C. § 3613 and 42 U.S.C. § 12133.

2.      Declaratory relief and injunctive relief are sought pursuant to 28 U.S.C. Section 2201, 42 U.S.C. Section 3613(c)(1) and 42 U.S.C. Section 12133, as well as Rules 57 and 65 of the Federal Rules of Civil Procedure.

3.      This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 *U.S.C.* § 1367.

4.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the District of New Jersey, since all acts complained of occurred within this District.

## PARTIES

5.      Plaintiff, Rising Sun Recovery, LLC ("Rising Sun" or "Plaintiff") is a New Jersey limited liability company with a principal place of business located in Cherry Hill, Camden County, New Jersey.

6.      Defendant, Washington Township Zoning Board of Adjustment, is the Zoning Board of Adjustment for Washington Township, Gloucester County, New Jersey (the "Board"), which is organized and operating pursuant to the Municipal Land Use Law, *N.J.S.A.* 40A:55D-1, *et seq*. Defendant maintains its offices at 523 Egg Harbor Road, Sewell, NJ 08080.

## STATUTORY AND REGULATORY FRAMEWORK

### Overview of Cooperative Sober Living Residences

7.      Effective January 16, 2018, the DCA adopted regulations recognizing and regulating "cooperative sober living residences," commonly referred to as "CSLRs."

8.      More specifically, the DCA amended its rooming and boarding house regulations set forth in Title 5, Chapter 27 of the New Jersey Administrative Code to establish a new "Class F license" specifically for the operation of CSLRs.

9.      The amendments define a "Cooperative Sober Living Residence" as a "residential setting that serves solely as a home for individuals who are recovering from drug or alcohol addiction and intended to provide an environment where the residents can support each other's sobriety and recovery." *N.J.A.C.* 5:27-2.1.

10.     Pursuant to the regulations, all CSLR's must obtain a Class F license from the DCA to operate.  *See N.J.A.C.* 5:27-1.6.

11.     Recognizing that it was "necessary to ensure that such facilities are operated in a manner that adequately protects the safety of residents," however, the DCA requires CSLRs to comply with some of the regulations applicable to rooming and boarding houses and specifically requires all CSLRs to abide by the following criteria:

- Management by an entity or organization that provides an operator who shall reside in the residence and exercise some level of control over the operation of the residence and establish the residence's rules;
- Occupancy shall not exceed 10 individuals, exclusive of the operator;
- The requirement of the maintenance of an alcohol and drug free environment;
- No provision of on-site counseling, therapy, clinical treatment, or alcohol and/or drug treatment by the licensee;
- No provision of food, laundry, financial, or other personal services by the licensee;
- Ability of licensee, at its discretion, to provide non-clinical recovery and support services. The licensee may also elect to mandate or encourage residents to attend self-help recovery programs, participate in activities related to maintaining sobriety and continuing recovery, or receive off-site services deemed desirable or necessary to maintain sobriety; and
- Ability of licensee, at its discretion, to require drug or alcohol testing of residents.

*See N.J.A.C.* 5:27-2.1.

12.     In adopting the regulations establishing a Class F license for CSLRs, the DCA recognized that CSLRs "fill an important niche and serve a laudable public purpose" and thus should be "encouraged." 49 *N.J.R.* 1276.

13.     The DCA has determined that the residents of a CSLR are the functional equivalent of a traditional family as they live and support each other as a "single housekeeping unit." *See* DCA Letter dated September 7, 2023, attached hereto as **Exhibit A**.

14.     A CSLR is designated as a single-family home, which is a Group R-3 or Group R-5 occupancy[1] (pursuant to *N.J.A.C.* [5:23-]6.31(q)); therefore, a new Certificate of Occupancy is not required. Only a one- or two-family dwelling may be converted to a CSLR.  *See* **Exhibit A**.

15.     Pursuant to *N.J.A.C.* 5:23-3.11(k), the DCA is "the sole enforcing agency for Cooperative Sober Living Residences licensed as Class F rooming houses."

### The Fair Housing Act and the Americans with Disabilities Act

16.     In 1988, Congress amended the Fair Housing Act, 42 *U.S.C.* §§ 3601, *et seq.* ("FHA") to extend the guarantee of fair housing to handicapped individuals. *See* 42 *U.S.C.* § 3604.

17.     Congress also authorized the Secretary of the United States Department of Housing and Urban Development to promulgate regulations to implement the FHA. *See* 42 *U.S.C.* § 3614a.

18.     Under the FHA, the term "handicap" means, with respect to a person, a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment." 42 *U.S.C.* § 3602(h).

19.     The term "physical or mental impairment" includes "alcoholism" and "drug addiction (other than addiction caused by current, illegal use of a controlled substance)." 24 *C.F.R.* § 100.201.

20.     Under the FHA, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made available. *See* 42 *U.S.C.* § 3604(f)(1).

21.     The FHA further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the handicap of that person or persons residing

---

[1] "Residential Group R-5 occupancies shall include all detached one- and two-family dwellings not more than three stories in height." *N.J.A.C.* 5:23-3.14(b)(3)(xv).

in or intending to reside in that dwelling after it is sold, rented, or made available. *See* 42 *U.S.C.* § 3604(f)(2).

22.     The federal regulations implementing the FHA specifically prohibit, as a discriminatory activity, providing municipal services differently because of a handicap. *See* 24 *C.F.R.* § 100.70(d)(4).

23.     The regulations also make it unlawful, because of a handicap, "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to . . . discourage or obstruct choices in a community, neighborhood or development." 24 *C.F.R.* § 100.70(a).

24.     The American with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination by any such entity.  *See* 42 *U.S.C.* § 12132.

25.     The federal regulations implementing the ADA prohibit a public entity from administering a licensing program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees that subject qualified individuals with disabilities to discrimination on the basis of disability. *See* 28 *C.F.R.* § 35.130(6).

26.     The regulations also make it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination. *See* 28 *C.F.R.* § 35.130(4)(I).

## OPERATIVE FACTS

### The Home

27.     On or about March 31, 2023, Rising Sun entered into a residential lease agreement with Michelle Dougherty, the owner of the property located at 908 Whitman Drive, Turnersville, NJ 08012, designated on the Tax Map of the Township of Washington as Block 253, Lot 13 (the "Property").

28.     The Property is improved with an existing, single-family detached dwelling with attached garage and a concrete driveway (the "Home"). Photographs of the exterior of the Home are attached hereto as **Exhibit B**.

29.     The Home has five (5) bedrooms and two (2) full bathrooms.

30.     Rising Sun rented the Home for the purpose of operating it as a CSLR for men in recovery from drug or alcohol addiction to provide them with an environment where they can support each other's sobriety and recovery.

31.     On or about May 5, 2023, Rising Sun obtained a Certificate of Inspection for the Home from the Washington Township Fire Department Bureau of Fire Prevention, as required by the CSLR regulations.

32.     The DCA completed its inspections, and on or about August 8, 2023, it issued a Class F license to Rising Sun and to Michelle Dougherty to own and/or operate a CSLR for up to six (6) individuals in the Home. Copies of the licenses are attached hereto as **Exhibit C** and **Exhibit D**, respectively.

33.     On or about the same day, the DCA also issued a Class F license to operate a CSLR at the Home to Ryan Palmer, the house manager. A copy of this license is attached hereto as **Exhibit E**.

34.     Since late August/early September of 2023, Rising Sun has utilized the home as a CSLR for disabled men in recovery from drug or alcohol abuse, to allow the residents to live as a single housekeeping unit and the functional equivalent of a family where they support each other's sobriety and recovery.

35.     In October of 2023, the DCA increased the capacity of the Home to allow for up to eight (8) individuals to live there, not including the house manager.  Copies of the updated licenses issued by the DCA on October 19, 2023, are attached hereto as composite **Exhibit F**.

### The Residents of the Home

36.     The residents of the Home are required to enter a contract with Rising Sun, in which they agree to abide by the Rules and Regulations for the Home.

37.     Consistent with the CSLR regulations, the residents of the Home live together as a single housekeeping unit, wherein they each share in the costs of the Home, including rent, utilities, food, and other household necessities.

38.     The residents each contribute to regular household chores, including the cleaning and maintenance of the interior and exterior of the Home.

39.     They also perform other normal daily household functions, such as shopping for food and household supplies, cooking, eating together, watching TV, reading and providing mutual support to one another.

40.     While the primary goal of the CSLR is to help the residents stay sober and clean, obtain and maintain jobs, and again become well-adjusted members of the community and of society as a whole, the occupation and use of the Home is identical to how a traditional family, or single housekeeping unit operates.

**The Home Is Situated within the Township's Planned
Residential One District (PR-1) Zoning District**

41.     The Property is located in the Planned Residential One District (PR-1) Zoning

District.

42.     Permitted uses in the PR-1 Zoning District include single-family detached houses.

*See* Zoning Ordinance at §§ 285-23, 285-54.

43.     The Home located at 908 Whitman Drive is a single-family detached dwelling.

44.     Section 285-9 of the Zoning Ordinance defines a single-family detached dwelling

as "[a] building designed for and occupied exclusively as residence for only one family and having

no party wall in common with an adjacent building."

45.     The Zoning Ordinance defines "family" as "[o]ne or more persons occupying a

dwelling unit as a single nonprofit housekeeping unit, who are living together as a bona fide, stable

and committed living unit, being a traditional family unit or the functional equivalent thereof,

exhibiting the generic character of a traditional family." *See* Zoning Ordinance at § 285-9.

46.     The Zoning Ordinance does not contain a definition for "single housekeeping unit,"

however, in the matter of *Borough of Glassboro v. Vallorosi*, 117 *N.J.* 421 (1990), the New Jersey

Supreme Court, found that definitions of "family" based upon legal relationships are

unconstitutional and reiterated its "clear preference" for "zoning provisions that equate[] the term

'single family' with a 'single housekeeping unit.'" *Id.* at 428.

47.     In this regard, the Court provided the following guidance on how the term "family"

must be defined:

> Our cases preclude municipalities from adopting zoning regulations that
> unreasonably distinguish between residential occupancy by unrelated persons in
> comparison with occupancy by individuals related by blood, marriage, or adoption.
> Our decisions permit zoning regulations to restrict uses in certain residential zones
> to single housekeeping units. But the standard for determining whether a use

qualifies as a single housekeeping unit must be functional, and hence capable of being met by either related or unrelated persons.

*Id.* at 431 (citations omitted) (emphasis added).

### The Issuance of Summonses and Application to the Zoning Board of Adjustment

48.     On or about September 18, 2023, September 19, 2023, and September 20, 2023, three summonses were issued to Shane Hanscom, the owner/operator of Rising Sun Recovery, LLC, charging violations of Section 285-15A(1)(a) of the Township's Zoning Ordinance, stating that no zoning permit was issued for 908 Whitman Drive, (presumably for a purported change in use).  A copy of the summonses issued to Shane Hanscom are attached hereto as composite **Exhibit G**.  In addition, on or about April 24, 2024, new summonses were issued in the name of Rising Sun Recovery, LLC.  Copies of the summonses issued to Rising Sun Recovery, LLC are attached hereto as composite **Exhibit H**.

49.     The summonses individually and collectively indicate that the Township considers Rising Sun's use of the Home as a commercial use even though the occupants of the Home, *i.e.* men in recovery from drug and alcohol addiction, use it as a single housekeeping unit where they live, eat, sleep, and share in the responsibilities for and maintenance of the Home and enjoy the support and camaraderie of the other residents of the Home in a family-like setting.

50.     As a result of the issuance of the foregoing summonses to Shane Hanscom, on or about October 19, 2023, Rising Sun filed an application with the Washington Township Zoning Board of Adjustment (the "Application") seeking a favorable ordinance interpretation pursuant to *N.J.S.A.* 40:55D-70(b), or in the alternative, a use variance relief pursuant to *N.J.S.A.* 40:55D-

70d(1), to permit the continued occupation of the Home by a group of men in recovery living together as a single housekeeping unit, *i.e.* a CSLR.[2]

51.     Specifically, Rising Sun requested that the Board interpret the definition of the term "family" as set forth in the Zoning Ordinance, to include the residents living in the Home.[3]

52.     In the alternative, Rising Sun requested that the Board grant a reasonable accommodation to permit the men in recovery residing in the Home, who qualify as individuals with disabilities, to continue to reside in the housing of their choice.

53.     The Application was deemed complete on or about October 24, 2023, and a hearing was set for December 11, 2023.

54.     However, approximately two (2) weeks before the hearing the Applicant was advised that there would not be enough Board members present on December 11 to vote on the Application, so the hearing was carried until January 8, 2024.

55.     Proper notice of the January 8, 2024, meeting was published and sent to property owners within 200 feet of the Home as required by the Municipal Land Use Law, *N.J.S.A.* 40:55D-12.

56.     Late in the evening on January 7, 2024, Rising Sun received a report from the Board's Professional.

57.     As a result, Rising Sun requested that the hearing be carried to provide it with an opportunity to address the comments raised in the Board Professional's report.

58.     The next meeting date on which everyone was available was March 11, 2024.

---

[2] To-date, the Municipal Court has held the summonses in abeyance pending the outcome of the Board's decision on Rising Sun's Application.
[3] "[T]he interpretation of an ordinance is primarily a question of law." *Columbro v. Lebanon Twp. Zoning Bd. of Adjustment*, 424 *N.J. Super.* 501, 508 (App. Div. 2012) (quoting *Wyzykowski v. Rizas,* 132 *N.J.* 509, 518 (1993)).

59.     The Board agreed to carry the hearing to March 11, 2024, and made an announcement to the public during the meeting on January 8, 2024, that the hearing on Rising Sun's Application would be rescheduled to the Board's March 11, 2024 meeting.

60.     A hearing on the Application subsequently was held before the Board on March 11, 2024.

### Hearing on the Application for a Favorable Interpretation

### Opening Statement by Counsel

61.     At the beginning of the presentation, Rising Sun's counsel thoroughly explained the purpose and intent of a CSLR and made it clear that in addition to traditional review by the Board under the Municipal Land Use Law, Rising Sun also sought a reasonable accommodation under both the FHA and ADA regarding the interpretation of the Zoning Ordinance and, if needed, in the Board's consideration of use variance relief should the interpretation be denied.

62.     Rising Sun's counsel specifically explained the relationship of the FHA and ADA to the application of the municipal zoning ordinance and further explained the case law that describes what a reasonable accommodation is and when it is appropriate for one to be granted.

63.     Prior to the commencement of any testimony, counsel specifically asked the Board to grant a reasonable accommodation in its interpretation of the Zoning Ordinance definition of the term "family" in the context of permitting the disabled class of individuals residing in this CSLR to continue to reside in the housing of their choice, i.e. in the Home.

### Shane Hanscom

64.     At the time of the hearing, Shane Hanscom testified on behalf of Rising Sun in support of Application.

65.   He testified that Rising Sun Recovery's mission is "[t]o provide a family environment for people seeking recovery out of treatment or just trying to stop using drugs and alcohol and starting a new way of life."

66.   As an addict in recovery who has been clean for over twelve (12) years, Mr. Hanscom testified from his personal experience that he understands the benefits of cooperative sober living.

67.   He explained that in a CSLR, individuals are living together in recovery.  He confirmed, however, a CSLR is not a treatment or rehabilitation facility and the CSLR does not, nor is it permitted to, provide any treatment services or prescribe medication to its residents.

68.   Mr. Hanscom testified that the residents of a CSLR live together like a family unit with everyone doing chores and holding each other accountable, shopping, going to meetings and eating together, enjoying the common areas and watching movies together, and remaining sober together.

69.   He stated that the residents share expenses and support the household as one unit, contributing financially on a weekly basis for rent, utilities, cable, and house supplies such as paper towels, toilet paper, dish soap and laundry detergent.

70.   Those residents who have a car will often give rides to the other residents who do not have car, when needed.

71.   Mr. Hanscom described it as a brotherhood, wherein the residents have a bond and they work together.  They are invested in each other's sobriety and well-being and help each other in the same way as a traditional family unit.

72.   He further testified that as a CSLR, Rising Sun is obligated to maintain a license issued by the DCA.

73. There are a total of three licenses required for operating this Home, which Mr. Hanscom testified are held by Rising Sun, the owner of the Home, and the house manager for the Home. *See also* **Exhibits C, D & E**.

74. Mr. Hanscom explained that before the licenses are issued, the DCA performs inspections of the home for building code compliance and safety and requires an inspection by the local fire safety official as well.

75. Per Mr. Hanscom's testimony, the licenses relating to Rising Sun were issued in August of 2023, and updated in October of 2023, to reflect the maximum number of individuals that are permitted to live in the Home. *See* **Exhibit F**.

76. He also testified that the inspections are repeated each year.

77. Mr. Hanscom identified the Home to be located at 908 Whitman Drive, which is at the intersection of Whitman Drive and Mohawk Street and within walking distance of St. Charles Borromeo Church on Johnson Road.

78. He described the home as a two-story, single-family dwelling with an elevated wood deck off the back of the house and a paver patio in the rear, fenced yard.

79. Mr. Hanscom further testified that on the first floor, there is a bedroom for three people that has a full bathroom, access to a laundry room and a door to the garage and backyard.

80. There also is a basement, which Mr. Hanscom testified can be used for storage, but not for living purposes.

81. On the second floor of the Home, Mr. Hanscom described that there is a common area or living room with a couch, recliners and a television, and next to that on the other side of the wall is the kitchen with access to the back porch.

82.     Mr. Hanscom testified that the common areas are under 24-hour video surveillance to which he has access.

83.     There are also two (2) single bedrooms, one (1) bathroom and two (2) double bedrooms on that floor according to Mr. Hanscom.

84.     Mr. Hanscom also confirmed that the capacity for nine (9) residents, including the house manager, is consistent with the maximum capacity indicated on the Class F licenses.

85.     Mr. Hanscom testified that he interviews each resident before they are approved to live in the Home and each must sign a move-in contract, which is a copy of the Rules and Regulations for the Home.  A copy of the Rules and Regulations is attached hereto as **Exhibit I**.

86.     He testified that he tries to provide housing to men in recovery who are from the general area so that their relatives are nearby to provide further support for their recovery.

87.     Mr. Hanscom also testified regarding the Rules and Regulations for the Home, stating that there is a zero-tolerance policy for drug or alcohol use and the residents are randomly tested for drugs.

88.     He stated that if someone is found to have a positive drug test, they are given fifteen (15) minutes to pack their belongings, and they are escorted from the premises, typically by Mr. Hanscom, the house manager, or another resident.  They are taken to a hotel or other safe environment; they are not simply permitted to walk out the front door and roam the community.

89.     Mr. Hanscom testified that individuals who relapse also are offered a treatment plan and Rising Sun tries to get them back into treatment by the next day.

90.     Mr. Hanscom testified that there had been three (3) relapses since this Home began operating as a CSLR, and each was escorted from the premises without the involvement of any local services or police.

91.     Mr. Hanscom also stated that typically less than half of the residents have cars, so there usually is sufficient off-street parking at the Home.

## Ryan Palmer

92.     Ryan Palmer testified that he is the house manager for the Home.

93.     He has resided there since August of 2023, and he too is in recovery, having been sober for three years.

94.     As the house manager, Mr. Palmer testified that he oversees the operations of the Home, holds the residents accountable and coordinates with Mr. Hanscom.

95.     Mr. Palmer administers random drug testing of the residents of the Home, sometimes at Mr. Hanscom's request, and sometimes by his own determination.

96.     Mr. Palmer holds a weekly meeting with the residents of the Home and shares the weekly assignment of chores.

97.     If any disputes arise between residents, the residents bring the issue to Mr. Palmer to address, which he may bring to Mr. Hanscom if necessary, though Mr. Palmer stated that there have not been any major disputes in the Home.

98.     Mr. Palmer indicated that the residents of the home are respectful of one another and keep things quiet during times when others are sleeping or studying.  There also is a 10:00 p.m. curfew for residents during their first 30 days of residing in the Home.

99.     Mr. Palmer testified that he believes sober living residences are necessary and that it has significantly helped him in his recovery.

## Alyssa Vicente

100.    Alyssa Vicente testified as an expert in the field of recovery and is a licensed clinical social worker and a licensed clinical alcohol and drug counselor in the State of New Jersey.

101.     Ms. Vicente also testified that she has been in recovery and recently celebrated ten (10) years of sobriety.

102.     She lives in the neighborhood where the Home is located.

103.     Ms. Vicente testified about drug treatment and stated that the plan for discharge needs to include a safe connection for the individuals leaving treatment.

104.     She further testified that her first choice for post-discharge living options are CSLRs, because individuals who reside in CSLRs after treatment typically have more success with long-term recovery.

105.     Ms. Vicente indicated that while some individuals may live in a CSLR for 6 to 8 months, there are others who remain there for several years.

106.     Ms. Vicente opined that individuals who reside in CSLRs are more successful because the CSLRs provide the type of support that one gets from a family – it is "a group of people who understand each other, who are there for each other, who are going through – often going through the same things."

107.     She further stated that the CSLR provides a feeling of safety and accountability for the residents, thereby supporting their sobriety efforts.

108.     In or about September of 2023, approximately 4,033 residents of Gloucester County were admitted for substance abuse, and approximately 2,700 of them were men.

109.     These numbers have been relatively consistent since 2020.

110.     There are 20 CSLRs located in Gloucester County, however, there is only one located in Washington Township, *i.e.*, the Home.

111.     Ms. Vicente testified that the location of the Home and use as a CSLR are appropriate because it is close to St. Charles, which hosts many meetings for individuals in

recovery, and to public transportation options, since many of the residents do not have cars to get to work or school.

### Joseph Petrongolo

112.    The Board's professional, Joseph Petrongolo, a professional planner, testified that other CSLRs he reviewed were not in neighborhood developments.

113.    Mr. Petrongolo also stated that CSLRs are a permitted use in a different zoning district, namely the O-1 Zone.

### Members of the Public

114.    Members of the public were provided with an opportunity to be heard following Rising Sun's presentation in support of the Application for Interpretation.

115.    As anticipated, the sentiments of the public were consistent with a "not in my back yard" position.

116.    Many insisted that the residents of a CSLR do not constitute a "family" in the sense of a traditional family and expressed concerns about safety, the proximity to a school, and the impact that "changing the zoning requirements" for the Home would have on their property values.

117.    Some stated that while they believe CSLR's are necessary, they should not be located in residential neighborhoods, and they should "go somewhere else" like a commercially zoned district, because the Home is operated as a for-profit entity and the residents are not a "family".

118.    Others indicated that the Township has already indicated in which zoning districts CSLRs are permissible and that there should be a buffer between CSLRs and other people living in neighborhoods.

119.     One individual who lives in the neighborhood in which the Home is located provided a hand-out to the Board with signatures of those expressing opposition to the Home.

120.     A former resident of the Home and a current resident of the other CSLR operated by Rising Sun also spoke and stated that the CSLR saved their lives and that they consider the men who live there as family, who have been there for them through tough times and good times and have loved and supported them no matter what.

121.     One of the Township Council members in attendance at the meeting stated that the Township recognizes there is a need for CSLRs and that the Board is committed to "finding a place where this works," but they do not believe that a CSLR belongs in a residential neighborhood.

**Denial of the Interpretation Application & Adoption of a Memorializing Resolution**

122.     The Board then voted on the Application for Interpretation and unanimously declined to find that the Zoning Ordinance's definition of "family" included residents of a CSLR.

123.     On or about April 8, 2024, the Board adopted a resolution memorializing its denial of a favorable interpretation of the term "family."   A copy of Resolution R-19-2024 is attached hereto as **Exhibit J.**

124.     The Resolution indicates the Board denied the Application for an Interpretation because it found that Rising Sun's use of the Property as a CSLR is not equivalent to a single-family use permitted in the PR-1 Zone and that the residents of the home do not meet the definition of "family" under the Township's Zoning Ordinance.

125.     The Board, however, failed to address Rising Sun's request for a reasonable accommodation either in its verbal vote or in the Resolution as the Resolution was notably absent of any reference to the fact Rising Sun had requested a reasonable accommodation in the

interpretation of the Zoning Ordinance nor did it contain an explanation as to why a reasonable accommodation was not granted.

126.    Because the Board denied the Application for Interpretation, Rising Sun moved forward with its application in the alternative for a use variance as a reasonable accommodation to allow the residents of the Home, men in recovery from drug and alcohol abuse, *i.e.* handicapped individuals, to continue to reside in the Home.

**Hearing on the Application for a Use Variance (Reasonable Accommodation)**

**Stephen Hawk**

127.    At the beginning of the presentation in support of the use variance, the Board acknowledged and agreed that all of the prior testimony provided in support of the interpretation also supported the use variance relief and therefore all of the prior testimony by Shane Hancsom, Ryan Palmer and Alyssa Vicente was deemed incorporated into the record in support of the use variance presentation.

128.    Also at the beginning of the presentation in support of the use variance, Rising Sun's counsel reminded the Board that Rising Sun sought a use variance under traditional concepts as well as in the context of providing a reasonable accommodation under the FHA and ADA.

129.    Thereafter Stephen Hawk testified on behalf of Rising Sun as its planning expert.

130.    Mr. Hawk is a licensed professional planner in New Jersey, and he is a member of the American Institute of Certified Planners. He was qualified and accepted by the Board as an expert in the field of professional planning.

131.    Mr. Hawk testified that Rising Sun's operation of a CSLR satisfies the criteria for a use variance.

132.   He testified that the use of the Home as a CSLR exhibits an inherently beneficial character as it provides housing for people who suffer from addiction and have completed intensive out-patient treatment and supports their efforts to maintain sobriety.

133.   Mr. Hawk further testified that the use as a CSLR fundamentally serves the public good and promotes the general welfare of the community as there is an unmet need for the services it provides.

134.   Mr. Hawk testified that,

Recovering addicts often lack financial resources and need a safe, stable, and affordable controlled residential environment to maintain sobriety. Peer support has been deemed to be a really effective factor in — and creates a great atmosphere for recovery. So the setting of the CSLR is something that's very effective and has been proven to be and has been something that's very beneficial. So a CSLR provides this needed resource, number one, an affordable place to live under the supervision of a house manager with rules and structure that supports the addict's effort to remain sober.

135.   After explaining why operating a CSLR is an inherently beneficial use of the Home, Mr. Hawk testified that the next step in the analysis is to engage in a balancing process as set forth in *Sica v. Board of Adjustment of the Township of Wall, 127 N.J. 152 (1992)*, which includes identifying the negative impacts associated with allowing the inherently beneficial use, identifying potential means of mitigating the negative impacts, and then comparing the negative impacts that remain after mitigation (the 'detriments') to the benefits of the use.  If the positive factors outweigh the remaining detriments, the variance should be granted.

136.   Mr. Hawk testified that the use of the Home as a CSLR advances purpose (a) of the Municipal Land Use Law, *N.J.S.A.* 40:55D-70, by promoting the public health, safety, morals and general welfare by addressing a critical public health need, and it advances the policy of the Fair Housing Act and the Americans with Disabilities Act, which considers those in drug or alcohol recovery as disabled persons – *i.e.,* a protected class.

21

137.    He further opined that the use of the Home as a CSLR advances purpose (g) of the Municipal Land Use Law, *N.J.S.A.* 40:55D-70, which is to provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both private and public, according to the respective environmental requirements in order to meet the needs of all New Jersey Citizens by providing the needed housing in an appropriate location with adequate facilities and a supportive environment for the men in recovery.

138.    Mr. Hawk described the CSLR as a "benign use with impacts similar to those of other dwellings within the neighborhood along Whitman Drive and other nearby streets," and stated that "the household family occupying this home will all cook, eat, watch TV, occupy their time at home doing the same things any household will do."

139.    The primary difference Mr. Hawk noted was that the residents of the Home must "abide by the rules that impose a greater level of control on their lifestyle," which "lessens their potential for any negative interactions with their neighbors."

140.    Mr. Hawk testified that the impact of a CSLR on the neighborhood will be consistent with those of other similar single-family dwellings in all respects.

141.    He also attested that any potential adverse impacts, anti-social behaviors or lack of upkeep of the home have been eliminated by virtue of the rigorous interview and resident selection process, as well as the imposition of strict rules and the presence of a house manager to enforce those rules.

142.    Mr. Hawk opined that no further measures beyond those already in place are proposed or warranted.

143.    Additionally, Mr. Hawk testified that there is adequate parking at the Home to address the needs of the residents and there typically will not be a need for on-street parking even though on-street parking is available if needed.

144.    Based on these factors, Mr. Hawk concluded that the location of the Home supports the capacity for this use and will appropriately absorb impacts without significant or substantial detriment to the surrounding uses or the public good.

145.    Mr. Hawk further testified that the use of the Home as a CSLR would not impair the intent and purpose of the zone plan or zoning ordinance, because the use is so similar to the surrounding residential uses within this residentially zoned community.

146.    The location of a CSLR in the Home is also a location that allows less reliance on cars, since the residents can walk to meetings at St. Charles, addressing a concern set forth in the 2020 Re-Examination Report which states that auto dependency is a major problem for the Township.

147.    Even if the Board were to disagree that a CSLR is an inherently beneficial use, Mr. Hawk testified that it furthered two purposes of the Municipal Land Use Law and therefore the use meets the positive criteria.

148.    Mr. Hawk also addressed the fact that even though the Office Residential (O-1) Zoning District now permits CLSRs, there are limited dwellings within the O-1 Zone that could accommodate a CSLR.

**Joseph Petrongolo**

149.    Mr. Petrongolo, the Township's professional, testified that there is only a presumption that a CSLR is inherently beneficial.

150.     He also testified that CSLRs are permitted in the O-1 Zone but they are a prohibited use in the PR-1 Zone, and the use of the Home as a CSLR is contrary to the Township's Zone plan and Master plan.

**Members of the Public**

151.     Members of the public again testified against permitting the Home to be used as a CSLR, asserting that the Home was too small to house nine men and there was no way for the neighbors to know who was living there.

152.     Other members of the public asserted that the operation of a boarding house is a business for profit and does not only serve a public need.

**Denial of the Use Variance Application and Adoption of a Memorializing Resolution**

153.     The Board unanimously denied the Application for a Use Variance, and on or about April 8, 2024, it adopted a resolution memorializing its denial.  A copy of Resolution R-20-2024 is attached as **Exhibit K**.

154.     The reasoning provided in the Resolution was that the use did not benefit the Township, the Zone Plan and zoning scheme or the Zoning Ordinances of Washington Township. *Id.*

155.     As with the Board's denial of the interpretation, in its denial of the use variance the Board again failed to address Rising Sun's request for a reasonable accommodation either in its verbal vote or in the Resolution.  Again, the Resolution did not contain any reference to the fact Rising Sun requested a reasonable accommodation nor did the Resolution explain why a reasonable accommodation was not granted.

**COUNT ONE**
**Violations of the Fair Housing Act**

156.     Plaintiff repeats the allegations contained in paragraphs 1 through 155 above, as if repeated and/or set forth at length herein.

157.     Under the FHA, it is unlawful to discriminate, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of a person residing in or intending to reside in that dwelling or any person associated with that buyer or renter. 42 *U.S.C.* § 3604 (f)(1).

158.     Under the FHA, it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person, a person residing in or intending to reside in that dwelling, or any person associated with that person. 42 *U.S.C.* § 3604 (f)(2).

159.     Here, the Home is a dwelling under the FHA and the residents, men in recovery from drugs and/or alcohol abuse, are "handicapped" individuals as defined by the FHA. *See* 42 U.S.C. § 3602(b), (h).

160.     The Board committed intentional discrimination by denying Rising Sun's Application for interpretation, by treating this protected class of disabled persons, namely a group of men in recovery living as a single housekeeping unit, differently by excluding them from the definition of "family" in the Township's Zoning Ordinance and by failing to provide a reasonable accommodation in interpreting the term "family" as defined under the Township's Zoning Ordinance to include the CSLR residents.

161.     The Board used the Township's Ordinance and the Township's zoning authority as a pretext to exclude handicapped individuals from residing in the Home and are enforcing ordinances that have the effect of denying housing to persons in recovery from drugs and alcohol.

162.     Because people who are handicapped by alcoholism or drug abuse are more likely to need a living arrangement such as the one provided by the Home, in which groups of unrelated individuals reside together in residential neighborhoods for mutual support during the recovery process, the Board's interpretation of the Zoning Ordinance's definition of "family" to exclude individuals in recovery from drugs and alcohol disparately impacts handicapped individuals.

163.     Moreover, by declining to include the residents of a CSLR in the Zoning Ordinance's definition of "family", the Board has failed to reasonably accommodate handicapped individuals, resulting in the residents being prohibited from living in a dwelling of their choice.

164.     The Board also has failed to provide a reasonable accommodation by denying the Application for a use variance to permit the residents of the Home to continue living in a CSLR in the neighborhood of their choice.

165.     By virtue of the foregoing, the Board has unlawfully discriminated against Rising Sun under the Fair Housing Act by treating its residents differently than other similarly situated individuals who wish to reside together as a single housekeeping unit.  The Board further denied a reasonable accommodation in its interpretation of the definition of the term "family" as set forth in the Zoning Ordinance and in its denial of a use variance to allow Rising Sun to continue operating a CSLR in the Home.

166.     The Board's conduct, as aforesaid, violates the FHA.

## COUNT TWO
## <u>Americans With Disabilities Act</u>

167.    Plaintiff repeats the allegations contained in paragraphs 1 through 155 above, as if repeated and/or set forth at length herein.

168.    Section 12132 of the Americans with Disabilities Act ("ADA") constitutes a general prohibition against discrimination by public entities on the basis of disability.

169.    Defendant is a public entity pursuant to 42 U.S.C. Section 12131(1).

170.    The current and prospective residents of the Home are qualified individuals with a disability as defined by the ADA, and Rising Sun is associated with and provides housing to people with disabilities as defined in 42 U.S.C. Section 12102(2).

171.    Because the requirements of the FHA and ADA are "essentially the same," federal courts "have concluded that the FHA analysis can be applied to ADA "claims as well as such cases where claims are brought under [both] statutes." *Yates Real Est., Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 *F. Supp. 3d* 889, 914 (Dist. N.J. 2019) (citing *In re Lapid Ventures, LLC*, 2011 WL 2429314, at *5 (Dist. N.J. June 13, 2011)).

172.    The Board has discriminated against handicapped residents and against Rising Sun because Rising Sun has provided housing to handicapped residents, as described herein and in Count One.

173.    Because people who are handicapped by alcoholism or drug abuse are more likely to need a living arrangement such as the one provided by the Home, in which groups of unrelated individuals reside together in residential neighborhoods for mutual support during the recovery process, Defendant's application of the Zoning Ordinance's definition of "family" has a disparate impact on handicapped individuals in recovery from drug or alcohol addiction.

174.     Moreover, by declining to include the residents of a CSLR in the Zoning Ordinance's definition of "family", the Board has failed to reasonably accommodate handicapped individuals, resulting in the residents being prohibited from living in the dwelling of their choice.

175.     Likewise, by denying a use variance the Board has violated the ADA by refusing to provide a reasonable accommodation to allow handicapped residents to reside in the Home, which is necessary to allow them to reside in a residential neighborhood of their choice and to prevent them from failing at recovery.

176.     The Board's conduct, as aforesaid, violates the ADA.

### COUNT THREE
### Municipal Land Use Law

177.     Plaintiff repeats the allegations contained in paragraphs 1 through 155 above, as if repeated and/or set forth at length herein.

178.     The Board was wrong as a matter of law, palpably abused its discretionary authority and acted in an arbitrary and capricious manner when it denied Rising Sun's application for a favorable interpretation and its application in the alternative for a use variance.

179.     The DCA has clearly indicated that the residents of a CSLR are the functional equivalent of a family, who reside together as a single housekeeping unit.

180.     The regulations implementing CSLRs require that they operate in single-family or two-family dwellings only.

181.     The Supreme Court of the State of New Jersey has found it unlawful to define "family" based on whether individuals are related or unrelated.

182.     By ignoring the guidance of the DCA, the regulations governing CSLRs and New Jersey Supreme Court case law, the Board acted arbitrarily, capriciously and unreasonably in denying housing to men in recovery from drug and alcohol abuse and treating this protected class

of disabled persons differently than non-disabled individuals wishing to reside together as a single housekeeping unit.

183.    Plaintiff's use of the Home as a CSLR is inherently beneficial.

184.    The Board abused its discretion in denying Plaintiff's variance application.  As detailed above, the reasons placed on the record for denying the application were without merit and Plaintiffs presented ample and largely uncontroverted evidence to address the Board's concerns.

185.    The Board is a quasi-judicial body charged with providing applicants with a fair and impartial hearing on matters before it, and whose function is to apply the facts presented at the hearing to the legal requirements so that it may decide whether Plaintiff's use is permitted under the zoning ordinance.

186.    In contravention of that obligation, the Board ignored the substantial evidence and legal authority that the CSLR is a permitted use as a single-family residence.

187.    The Board's actions are shocking to the conscience and in direct contravention of the MLUL, the Township Ordinance, and the laws of the State of New Jersey.

188.    The Board's conduct, as aforesaid, was arbitrary, capricious and unreasonable and therefore violates the MLUL.

## JURY DEMAND

189.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## RELIEF SOUGHT AS TO ALL COUNTS

WHEREFORE, by reason of the foregoing, Plaintiff, Rising Sun Recovery, LLC, hereby prays and requests that the Court, pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 3613(c)(1), and 42 U.S.C. § 12133, declare that the Defendant, Washington Township Zoning Board of Adjustment, has violated the Fair Housing Act, the Americans with Disabilities Act and the New Jersey Municipal Land Use Law; enjoin them from interfering with the lawful occupation of dwellings within the Township zoned for use by a family, the equivalent of a family, or a single housekeeping unit by the residents of Rising Sun or any other CSLR; award compensatory damages, punitive damages, reasonable attorney's fees and costs of suit; and award such other and further relief as the Court deems proper and just.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to L. Civ. R. 11.2, the Plaintiff certifies that the matter in controversy in this case is not the subject of any pending actions.

NEHMAD DAVIS & GOLDSTEIN, P.C.


Date:                               By: *s/Stephanie E. Farrell*
                                        STEPHANIE E. FARRELL
                                        Attorneys for Plaintiff, Rising Sun Recovery, LLC


NEHMAD DAVIS & GOLDSTEIN, P.C.


Date:                               By: *s/CherylLynn Walters*
                                        CHERYLLYNN WALTERS
                                        Attorneys for Plaintiff, Rising Sun Recovery, LLC

## VERIFICATION

I, Shane Hanscom, owner/operator of Rising Sun Recovery, LLC, declare under the

penalty of perjury that the foregoing is true and correct to the best of my personal knowledge and

belief.

Date:   6-18-2024

Shane Hanscom

31